# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| COLUMBIAN FINANCIAL CORPORATION and CARL McCAFFREE, ) ) ) ) Plaintiffs, ) ) v. ) ) BANCINSURE, INC., ) ) Defendant. ) ) ) | CIVIL ACTION<br><br>Case No. 08-2642-CM |

## MEMORANDUM AND ORDER

Plaintiffs Columbian Financial Corporation ("Columbian Financial") and Carl McCaffree bring this declaratory judgment action, seeking a declaration that claims covered by a directors and officers liability insurance policy may be reported to the insurer, defendant BankInsure, Inc., at any time prior to the expiration of the policy. BancInsure issued the policy to Columbian Financial and Columbian Bank and Trust Company ("the Bank") in 2007, but the Bank ceased active banking in 2008 and the Federal Deposit Insurance Corporation ("FDIC") was appointed as its receiver. BancInsure claims that the appointment of the receiver automatically canceled and effectively terminated the policy.

Alternatively, plaintiffs claim that they have a right to purchase an extended reporting period. Finally, as a last alternative, plaintiffs claim that they are entitled to coverage for claims reported within thirty days of the appointment of the receiver.

The parties agree that there are no factual disputes in this case. They have each filed motions for summary judgment: plaintiffs' Motion for Summary Judgment (Doc. 30) and Defendant BancInsure, Inc.'s Motion for Summary Judgment (Doc. 32).

## I. FACTUAL BACKGROUND

As noted above, the parties have agreed to all material facts. The facts upon which they agree, taken directly from the Stipulation of All Material Facts (Doc. 29) but reduced in number based on relevance to the court's decision, are as follows:

1. A directors' and officers' liability insurance policy (No. 15DO00163-2) ("the Policy") was issued by BancInsure to Columbian Financial and the Bank, with a policy period of May 11, 2007 through May 11, 2010.

2. All required premiums due under the Policy have been paid.

3. BancInsure's aggregate liability for each policy year is $5,000,000.

4. Columbian Financial was the parent company and the Bank was the subsidiary, as defined by the Policy.

5. Carl McCaffree is an insured person as defined by the Policy.

6. Brian McGowan is an insured person as defined by the Policy.

7. Columbian Financial is an insured as defined by the Policy.

8. In relevant part, the Policy provided:

   SECTION I. INSURING AGREEMENTS.
   A. The Insurer agrees with the Insured Persons that, subject to all the other provisions of this Policy, if during the Policy Period, any Claim or Claims for a Wrongful Act are first made against any Insured Person, and reported to the Insurer, the Insurer, subject to the applicable law, will pay on behalf of the Insured Persons, Loss which the Insured Persons shall be legally obligated to pay and which is not otherwise undertaken to be paid by the Insurer on behalf of the Company in accordance with Section I.B.

   B. The Insurer agrees with the Company that subject to all the other provisions of this Policy, if, during the Policy Period, any Claim or Claims for a Wrongful Act are first made against any Insured Person, and reported to the Insurer, the Insurer will pay on behalf of the Company, Loss for which the Company has, to the extent required or permitted by law, indemnified the insured Persons.

SECTION II. EXTENDED REPORTING PERIOD.

If the Insurer or Company cancels or does not renew the Policy, the Parent Company shall have the right, upon payment of the premium shown in Item 6. (a) of the Declarations, to an extension of the coverage granted by this Policy with respect to any Claim or Claims made and reported to the Insured during the Extended Reporting Period, but only with respect to any Wrongful Act committed before the effective date of such cancellation or nonrenewal.

There shall be no right to an Extended Reporting Period unless a written request for this extension, together with payment of the appropriate premium is received by the insurer at the address shown in Item 9. of the Declarations within thirty (30) days after the effective date of cancellation or nonrenewal of the Policy.

SECTION III. COVERAGE CLAUSE.

This Policy shall cover, subject to all other provisions of the Policy, Loss that results from a Claim for a Wrongful Act committed during or prior to the Policy Period on the condition that written notice of the Claim is given to the Insurer at the address shown in Item 9. of the Declarations. Such notice must be received by the Insurer (1) within the Policy Period, or (2) within the Extended Reporting Period, if the Extended Reporting Period is elected by the Parent Company in accordance with Section II. For purposes of this Section III., any Claim made subsequent to the Policy Period as to which written notice was received by the Insurer at the address shown in Item 9. of the Declarations within the Policy Period as provided in Section IX.B., shall be treated as a Claim made during the Policy Period.

SECTION IV. DEFINITIONS

\* \* \*

B. "Company" shall mean the Parent Company and any Subsidiary as defined in Section IV.D.

D. "Subsidiary" shall mean an entity that, at the inception Date of this Policy, is named in the Application Form and of which more than fifty percent (50%) of the voting stock is owned by the Parent Company, either directly or through one or more of its Subsidiaries.

E. "Claim" shall mean any judicial or administrative proceeding that is filed against an Insured Person in any state or federal court or administrative agency, in which such Insured Person could be subjected to a binding adjudication of liability for damages or other civil relief. A Claim shall be deemed to have been made on the date that the judicial or administrative proceeding is filed in court or with the administrative agency.

\* \* \*

K. "Policy Period" shall mean the period from the Inception Date of this Policy to either the Policy Expiration Date, as shown in Item 5. of the Declarations or the date on which the Policy is effectively terminated, whichever is sooner, but shall not include the Extended Reporting Period.

SECTION V. EXCLUSIONS.
The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured Persons based upon, arising out of, relating to, in consequence of, or in any way involving: . . .

* * *

12. any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization ("Agency").
This exclusion shall include, but not be limited to, any type of legal action which any such Agency may bring as receiver, conservator, trustee, liquidator, rehabilitator or in any capacity, whether such action or proceeding is brought in the name of such Agency or by or on behalf of such Agency in the name of any other entity or solely in the name of any third party;

* * *

SECTION IX. NOTICE OF CLAIM.

A. The Insured Persons and the Company shall, as a condition precedent to their rights under this Policy, give the Insurer notice, in writing, as soon as practicable of any Claim and shall give the Insurer such information and cooperation as it may reasonably require.

B. If, during the Policy Period, any Insured Person or the Company (1) receives written or oral notice from any party that it is the intention of such party to hold any Insured Person responsible for a specific alleged Wrongful Act, or (2) becomes aware of any circumstances that may give rise to a Claim against any Insured Person for a specific alleged Wrongful Act; and, as soon as practicable gives written notice of the potential Claim to the Insurer as referenced in subsections (1) and (2) above, which notice is in any event received by the Insurer no later than thirty (30) days following the end of the Policy Period, and such notice includes (1) the reasons for anticipating such a Claim, (2) the nature and date of the alleged Wrongful Acts, (3) the alleged injury, (4) the names of the potential claimants and any Insured Person involved in the alleged Wrongful Acts, and (5) the manner in which any Insured Person or the Company first became aware of the potential Claim, then any Claim, the potential of which was specifically identified as required above, shall, for the purpose of this Policy, be treated as a Claim made during the Policy Period.

C. Notice hereunder shall be effective on the date of receipt by the Insurer at the address shown in item 9. of the Declarations.

D. In addition to furnishing the notice as provided in Section IX. A. and B., the Insured Persons and the Company shall, as soon as practicable, furnish the Insurer with copies of reports, investigations, pleadings and all other papers in connection therewith.

Section X. GENERAL CONDITIONS

\* \* \*

E. Reorganization/Cessation of Business

\* \* \*

If after the effective date of this Policy, the Company shall cease to engage in an active banking business or cease to accept deposits for any reason, coverage shall cease as of the date of the cessation of such business, and, absent a specific written agreement to the contrary, the Company shall not be entitled to obtain the extended coverage provided under Section II. of the Policy. For the purposes of this clause, the cessation of the business of banking shall include, but not be limited to, the appointment by any federal or state banking regulators of a receiver, liquidator or person in a similar capacity and any Transaction occurring at the request of any federal or state Case regulator. The Company shall provide written notice of such cessation of business to the insurer as soon as practicable together with such information as the Insurer may request.

9. The insureds purchased and paid an additional premium for Endorsement BI-DO-00316, which deletes Section V.12 from the Policy.

10. Endorsement BI-DO-KS-101(0295) provides that Columbian Financial may obtain a three-year extension to the reporting period under Section II of the Policy by paying 187.5% of the annual premium.

11. The Policy was in full force and effect as of August 22, 2008.

12. Neither the Bank, Columbian Financial, nor BancInsure canceled the Policy.

13. On August 22, 2008, the Kansas state bank commissioner issued a Declaration of Insolvency

and Tender of Receivership in the matter of Columbian Bank and Trust Company, and declared the Bank insolvent, took charge of the Bank, and appointed the FDIC as its receiver.

14. The Bank ceased to engage in an active banking business on August 22, 2008.

15. The Bank ceased accepting deposits on August 22, 2008.

16. On September 2, 2008, BancInsure received a letter dated August 28, 2008, from Robert D. McGillicuddy, Counsel, FDIC, to BancInsure, providing BancInsure with written notice of circumstances that could give rise to potential claims against the former officers and directors of the Bank for mismanagement.

17. Within 30 days of August 22, 2008, BancInsure received several letters providing notice of potential claims and circumstances, and demanding damages.

## II. STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The filing of cross-motions for summary judgment does not change the standard of review. *James Barlow Family Ltd. P'ship v. David M. Munson Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) ("Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.").

## III. DISCUSSION

Kansas law governs this dispute. *Safeco Ins. Co. of Am. v. Allen*, 941 P.2d 1365, 1372 (Kan. 1997). Under Kansas law, the court must construe the language of an insurance policy in such a way as to give effect to the parties' intention. *O'Bryan v. Columbia Ins. Group*, 56 P.3d 789, 792 (Kan. 2002); *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1219 (Kan. 1998). The court "endeavor[s] to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished." *O'Bryan*, 56 P.3d at 792 (citing *Farm Bureau Mut. Ins. Co. v. Horinek*, 660 P.2d 1374 (Kan. 1983)). The court gives the language of the policy reasonable, fair, and practical construction, *Liggatt v. Employers Mut. Cas. Co.*, 46 P.3d 1120, 1125 (Kan. 2002), using the standard of how a reasonably prudent insured would understand the language, *Cannon v. Farmers Ins. Co.*, 50 P.3d 48, 53 (Kan. 2002). But the court does not consider the provisions of an insurance policy in isolation; rather, the court considers all of the provisions of a policy together. *Allstate Ins. Co. v. Johnson*, 339 F. Supp. 2d 1191, 1194 (D. Kan. 2004).

**A. Did the insurance policy automatically cancel upon the appointment of a receiver?**

The key question in this case is whether the insurance policy automatically canceled upon the appointment of a receiver for the Bank. More specifically, the question is whether "coverage shall cease" means the same thing as "the policy automatically canceled" or "the policy effectively terminated." Stated differently, does "coverage" mean the same as "policy"? To answer these questions, the court looks to the plain language of the policy.

A key question in this matter is the interpretation of Section X.E. of the policy—the "Cessation of Business" provision. That provision states that if "the Company shall cease to engage in an active banking business or cease to accept deposits for any reason, coverage shall cease as of

-7-

the date of the cessation of such business. . . ." The terminology "coverage shall cease" appears only one other place in the policy, in section X.F., addressing the situation where a subsidiary is sold or dissolves.[1]

In contrast, the policy does provide two specific situations in which the "policy may be canceled." These situations are enumerated under the section heading "Cancellation or Nonrenewal," which is Section X.B. First, that section provides that the "Policy may be canceled by the Parent Company and as agent for the Insured Persons by written notice to the Insurer. . . ." Second, the base policy states that BancInsure can cancel the policy for any reason with thirty days notice, but that provision is modified by an endorsement that limits the reasons for cancellation. Neither of these situations has occurred here. The use of different terminology that clearly identifies situations in which the policy is canceled indicates to the court that "coverage shall cease" does not mean that the policy is canceled or terminated.

Also significant in the court's analysis is the Regulatory Exclusion Endorsement. This endorsement provides coverage for actions brought by deposit insurance organizations as receivers during the policy year. The presence of this endorsement (and the intentional deletion of Section V.12, excluding legal actions brought by receivers) indicates that the parties did not intend for the policy to terminate upon the appointment of a receiver. If the "policy period," or "policy year," automatically terminated upon the appointment of a receiver, the endorsement would be rendered meaningless.

---

[1] This section states that "the Policy shall continue to apply, until the termination date of the Policy, to Claims for Wrongful Acts prior to the time of sale or dissolution. However, in the event of sale or dissolution, coverage shall cease as of the date or sale or dissolution for any actual or alleged Wrongful Acts occurring thereafter."

BancInsure claims that the endorsement is still given meaning because the receiver would have thirty days after termination of the policy in which to bring claims. But that thirty-day window is not termed part of the "policy period." Rather, Section IX.B. of the policy states that a claim brought during the thirty-day window will be "treated as a Claim made during the Policy Period." If a claim is merely "treated as" being made during a policy period, it necessarily follows that the claim was not actually made during the policy period. BancInsure's argument is not persuasive.

BancInsure also cites an unpublished Tenth Circuit case in support of its position, *American Casualty Co. v. Federal Deposit Insurance Corp.*, No. 93-6216, 1994 WL 387891 (10th Cir. July 26, 1994). In *American*, the Tenth Circuit affirmed a finding by the district court that a "policy ceased when state regulators closed the bank and no event during the policy term invoked coverage." 1994 WL 387891, at *1. At the time the receiver was appointed, the insurance company had notified the bank that it would not renew the policy, and the bank had extended its coverage for twelve months. *Id.* The policy contained a provision titled "Reorganization, Cessation of Business" that stated, "[I]f the Bank has ceased to engage in an active banking business or to accept deposits, coverage shall cease as of the date of the . . . cessation of such business. . . ." Based on this language, BancInsure argues that *American* stands for the proposition that "coverage shall cease" means the same thing as the "policy [shall] cease[]."

At first glance, *American* appears to present a similar situation to the one presently before the court. But on closer examination, the case is distinguishable in three significant ways: (1) the *American* policy did not contain an endorsement affirmatively granting coverage for actions brought by regulatory agencies; (2) the *American* policy had already expired and was in a period of extended reporting at the time the bank was closed; and (3) in *American*, the "Reorganization, Cessation of

Business" clause was an endorsement that modified the policy, but here, the Cessation of Business clause in the policy is modified by the Regulatory Exclusion Endorsement. This difference is key.

For these reasons, the court determines that the language of the policy is unambiguous. Under the policy, coverage ceased when the receiver was appointed, but the policy itself did not effectively terminate or automatically cancel. Any other reading of the policy and its endorsements would be illogical. The policy period continues until May 11, 2010.

**B. Is Columbian Entitled to Purchase an Extended Reporting Period?**

The court need not answer this question, as plaintiffs only present this theory of recovery as an alternative to their theory that the policy period continues until its stated ending date—May 11, 2010.

**C. Are Future Claims Covered Under the Policy?**

Plaintiffs present this question in their briefs, but they did not preserve the issue in the pretrial order. Plaintiffs have therefore waived the issue. *Hullman v. Bd. of Trustees*, 732 F. Supp. 91, 93 (D. Kan. 1990) (citing *Bieber v. Associated Collection Servs., Inc.*, 631 F. Supp. 1410, 1414 (D. Kan. 1986)) ("A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment.").

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Summary Judgment (Doc. 30) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendant BancInsure, Inc.'s Motion for Summary Judgment (Doc. 32) is denied.

Dated this 30th day of November 2009, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**